CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

FEB 19 2016

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| BLAKE BARRY BOWLES, | CASE NO. 7:15CV00138 |
| Petitioner, | |
| v. | MEMORANDUM OPINION |
| HAROLD CLARKE, DIRECTOR, | By: Hon. Glen E. Conrad |
| | Chief United States District Judge |
| Respondent. | |

Blake Barry Bowles, a Virginia inmate proceeding pro se, filed this petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging the validity of his confinement on his conviction for second degree murder.[1] After review of the record, the court concludes that the motion to dismiss must be granted.

**I.**

Bowles faced trial in Charlottesville Circuit Court on a charge of first degree murder in the death of his wife, who was stabbed over a dozen times. Among other evidence presented to the jury was Bowles' videotaped confession. Bowles' defense was that he became enraged after believing that his wife was cheating on him. The Circuit Court included an instruction allowing the jury to consider the lesser included offenses of second degree murder and manslaughter. The jury found Bowles guilty of second degree murder and recommended a sentence of fifteen years in prison. The court issued its final order on September 17, 2012, imposing the sentence recommended by the jury. Bowles did not appeal his conviction or sentence.

Bowles filed a pro se petition for a writ of habeas corpus in May 2013 in the Charlottesville Circuit Court. (CL13-203.) He alleged two claims for relief: (1) trial counsel

---

[1] Bowles originally filed his action in the United States District Court for the Eastern District of Virginia. It was transferred here because the court that imposed the judgment under challenge is located in this district.

was ineffective when he "refused to do petitioner's direct appeal after being instructed to do so"; and (2) trial counsel was ineffective when he "failed to object to [the] prosecution['s] failure to disclose evidence favorable to the accused." (State Habeas Pet. Annex 1-2, ECF No. 14, at pp. 12-13.) The Circuit Court conducted an evidentiary hearing on Claim (1) that has been transcribed (hereinafter "Tr.").

Bowles testified that during trial, he pointed out inaccuracies in the Commonwealth's evidence, such as the prosecution's assertion that a recording of a 911 call depicted Bowles and his wife arguing, when the voices on the recording were actually Bowles and his mother-in-law. Bowles testified that during four different conversations with counsel about his convictions and sentence, he told counsel, "I want to file an appeal based on Brady's violation" with regard to the 911 recording; counsel told Bowles, "[Y]ou don't have anything to appeal on. . . . [J]ust be grateful for the time that you have." (Tr. 7, 9, ECF No. 22.) Bowles testified that he wanted to appeal the prosecution's handling of the case, not the length of the sentence. (Tr. 14) ("I wouldn't have cared how much time they came back with if the truth would have been told."). Bowles admitted that after the June 2012 sentencing hearing, he never spoke or wrote to his counsel again about an appeal and did not write to the Circuit Court about an appeal.

Bowles' defense counsel testified that Bowles asked about an appeal immediately after the jury's guilty verdict, but counsel told him to wait to see what sentence the jury recommended. Counsel testified that the state sentencing guidelines in Bowles' case called for a "midpoint of roughly twenty years" in prison, with the low end of the guideline range at "fifteen years and some months." (Tr. 35.) When the jury recommended only fifteen years, counsel advised against an appeal. He told Bowles, "[T]here is nothing in this case that could get you an acquittal" and if an appeal resulted in a new trial on second degree murder, the sentence could be

2

forty years, given the evidence of seventeen stab wounds and Bowles' nine prior felony convictions. (Tr. 30-31, 36.) Counsel testified that while there was a chance that a retrial could result in a manslaughter verdict for a maximum sentence of ten years, he told Bowles that the likelihood of such an outcome was low, while the likelihood of a more severe sentence after a retrial was high; counsel told Bowles, "You could do a lot worse on retrial. I wouldn't advise you to take that chance. . . . [A]re you willing to take that chance?" (Tr. 32.) According to counsel, Bowles "kind of shook his head" and said he "wasn't worried about the time."[2] (Tr. 32.) Counsel testified, "I'm certain [Bowles] never unequivocally asked us to file a petition" for appeal, but if he had done so, counsel would have "filed a notice of appeal, asked to be appointed for the appeal, away we would have gone." (Tr. 34.)

On June 20, 2014, the Circuit Court issued an eleven-page final order dismissing Bowles' habeas petition in its entirety. Bowles unsuccessfully appealed this order to the Supreme Court of Virginia.[3] (Record No. 140975.)

Bowles then filed a timely petition under § 2254, raising the same two claims for habeas relief that he presented in his state court petition. Respondent moved to dismiss under § 2254(d), and Bowles responded. Court records provided for review include the Circuit Court criminal and habeas files and the habeas appeal record from the Supreme Court of Virginia.

---

[2] Counsel testified that he did not have "an absolutely clear recollection about which conversation of different conversations this was in." (Tr. 32.) Counsel described his experience with Bowles over the course of the case:
> [A]ll during our representation of him there were sort of two different minds sets here. One was a sense of profound remorse and regret and sorrow and upset about having caused the death of his wife. And his statement to the police and . . . to us it was always . . . I don't deserve to live. I shouldn't even be here. I don't know why I'm still here and she's not and so on. And then, and he wasn't worried about it was fifteen (15) years as opposed to a life sentence or anything else. On the other hand, he didn't want to do (15) years.

(Tr. 32.)

[3] While Bowles' habeas petition was pending in the Circuit Court, he filed a duplicative petition in the Supreme Court of Virginia, which was dismissed as successive on October 21, 2013. (Record No. 130871.)

3

## II.

To obtain federal habeas relief, petitioner must demonstrate that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Under 28 U.S.C. § 2254(d), however, the federal habeas court may not grant a writ of habeas corpus based on any claim that a state court decided on the merits unless that adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); see also Williams v. Taylor, 529 U.S. 362, 403-13 (2000). "Where, as here, the state court's application of governing federal law is challenged, it must be shown to be not only erroneous, but objectively unreasonable." Yarborough v. Gentry, 540 U.S. 1, 5 (2003). Under this standard, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 66, 101 (2011) (omitting internal quotations). Factual determinations made by the state court are "presumed to be correct," and petitioner has the burden of rebutting that presumption of correctness by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

To state a constitutional claim for ineffective assistance, petitioner must satisfy a two-prong test by showing (1) "that counsel's performance was deficient," and (2) "that the deficient performance prejudiced the defense." Strickland v. Washington, 466 U.S. 668, 686-87 (1984). Petitioner must overcome "a strong presumption" that counsel's performance was reasonably competent, and the court may adjudge counsel's performance deficient only when petitioner demonstrates that "in light of all the circumstances, the identified acts or omissions were outside

4

the wide range of professionally competent assistance." Id. at 689-90. Even if petitioner can establish deficient performance under this high standard, relief remains unavailable unless he also shows a "reasonable probability" that, but for counsel's errors, the outcome of the proceeding would have been different. Id. at 694-95. The court must deny relief if petitioner fails to establish either of the Strickland prongs. Id. 697.

"[A] lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000). In such cases, defendant need not show that his appeal likely would have had merit, and the remedy is to grant him a new appeal. Id. Under certain circumstances, counsel has a duty to consult with his client about an appeal. Id. at 479-84. However, "[i]f counsel has consulted with the defendant, the question of deficient performance is easily answered: Counsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal." Id. at 478.

In Bowles' case, the Circuit Court rejected both of his ineffective assistance claims under Flores-Ortega and Strickland, and on appeal, the Supreme Court of Virginia issued a summary order finding no error. Thus, under § 2254(d), this court may grant relief only upon determining that the Circuit Court's application of the federal legal standards was objectively unreasonable. See, e.g., Brumfield v. Cain, __U.S.__, __, 135 S. Ct. 2269, 2276 (2015) (finding that federal habeas court "look[s] through" state supreme court's summary dismissal of appeal petition and evaluates lower court's reasoned decision addressing claims on the merits) (citations omitted); Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) (recognizing federal reviewing court's obligation for "doubly deferential judicial review" of Strickland claims under § 2254(d)(1);

5

"because the Strickland standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard") (citation omitted).

### Claim 1: Counsel's Failure to Appeal

In his state habeas petition, as here, Bowles alleged that after sentencing, he told counsel to file a notice of appeal, and counsel refused, telling him that he should be happy with the sentence he had received. In the final order, the Circuit Court summarized Bowles testimony:

> After the jury returned with its sentence . . . and while [he and counsel] still sat at the defense table in the courtroom, [Bowles] told [counsel] that he wanted to appeal. . . . [Counsel] told him, "Be happy with what you got," and had no further discussions with him regarding the risks or merits of an appeal. . . . [Bowles] repeated his request to [co-counsel] in the Court's holding cell, and [was told] to just be happy with his sentence. [Bowles] again requested that his attorneys file an appeal when he saw them at the Court's sentencing. . . .

(Cir. Ct. Habeas Final Order 5, ECF No. 14, at pp. 39-50.) The Circuit Court also summarized counsel's testimony:

> [Counsel] testified that he and [Bowles] had not discussed his appellate rights until the jury returned its sentence. . . . [W]hen [Bowles] suggested an appeal, [counsel] explained the possible risks and benefits to him and strongly advised him not to pursue an appeal due to great risk and little potential benefit. . . . [A]fter he so advised [Bowles], [Bowles] never instructed him to file an appeal. . . .

(Id. 5-6.) Whereupon, the Circuit Court stated: "This Court credits [counsel's] testimony, and not [Bowles']. Accordingly it finds that [counsel] consulted with [Bowles] about his appellate rights and that [Bowles] did not specifically and unequivocally instruct [counsel] to file an appeal." (Id. at 6) (applying Flores-Ortega standard).

After review of the state court record, the court concludes that Bowles is not entitled to federal habeas relief under § 2254. He has not demonstrated that the Circuit Court's adjudication of this ineffective assistance claim is contrary to, or an unreasonable application of, Flores-Ortega, as established federal law. 528 U.S. at 477-78. Likewise, he has not shown that the

6

Circuit Court's holding rested on an unreasonable determination of the facts in light of the evidence presented in the evidentiary hearing, as summarized in Section I of this memorandum opinion. Moreover, the Circuit Court made a factual finding that counsel's testimony was more credible than Bowles' testimony. This court must presume the Circuit Court's factual finding to be correct, absent a showing to the contrary by clear and convincing evidence. § 2254(e)(1). Bowles has made no such showing.

Furthermore, this court finds counsel's testimony both credible and compelling. Although jurors had rejected the option to convict Bowles of manslaughter, they had recommended a below-guideline sentence. Counsel's testimony reflected his detailed memory of Bowles' case and trial and his reasoned belief that Bowles had almost nothing to gain and much to lose if he won a retrial on appeal. Crediting counsel's testimony that he explained these circumstances fully to Bowles after the jury's sentencing recommendation and advised against an appeal, the court cannot find credible Bowles' testimony that he instructed counsel to file an appeal. Therefore, this court, like the Circuit Court, finds no ineffective assistance as alleged in Claim (1), and will grant the motion to dismiss as to this claim.

## Claim 2: No <u>Brady</u> Objection

Bowles' second ineffective assistance claim in state court, as here, apparently rested on his complaint that the Commonwealth "deleted" portions of his videotaped confession, an act that Bowles characterizes as a failure to disclose favorable evidence, in violation of <u>Brady v. Maryland,</u> 373 U.S. 83 (1963). Bowles apparently claimed that if counsel had objected to these purported deletions and had then ensured that the jury viewed the deleted portions of the

7

confession to substantiate his "heat-of-passion" defense, this evidence would have created a reasonable probability of a different outcome.[4]

Liberally construing Bowles' rather rambling statement of this second claim, the Circuit Court rejected it under several possible legal theories. First, the Court found there could be no deficient performance under Strickland, if counsel did not know that any video segments had been deleted.[5] The Court further found that counsel would not have been deficient in failing to make a futile objection over the Commonwealth's evidentiary choice about what portions of the video to present, and that counsel's decision not to show further video was presumed to be a strategic evidentiary choice not subject to second-guessing on habeas.[6] Finally, the Court found that Bowles had not demonstrated prejudice under Strickland:

> [Bowles] stabbed his wife over a dozen times, his mother-in-law observed him at the scene, and he fled the scene but was caught literally red-handed with his wife's blood on his hands and clothes. [Bowles's] argument requires that the jury would have accepted his self-serving insistence that he acted "in shock, fully or rage, and without thinking," but disregarded that he
> -insisted that his wife was cheating but detailed running around and through the house without ever seeing another man;

---

[4] According to Bowles, in the deleted sections of his videotaped confession, he stated:
I returned to my home unexpectedly to get a speaker system from my car. When Ms. Watkins seen me pull up she came out on her porch, calling 911, saying it was a domestic disturbance at my home. I knew this couldn't be true, because I was just pulling up to get a speaker from my car beside my house when Ms. Watkins asked for a police car to be sent to 1508B. I said what? Then I ran to my front door, only to find the screen locked. I started yelling open up. Then I ran to my bedroom window which is on the same side as my front door. "Open up." After doing this for what seem[ed] like forever, I broke out the bedroom window, because that's where I heard Rachel saying to the man, Barry is out there. After being almost through the window, Rachel open[ed] the front door. I dropped back down to the bench that was under the window and ran to the door pushing pas[t] Rachel to catch the man in the house. Thinking he had went out the window that I broke, I returned to Rachel, asking her why. At this point I was in shock, full of uncontrollable rage, and without thinking, I repeatedly stabbed my wife. None of this was planned nor intended. All I know is the woman that I've been with for 26 years was dead. And by the hands of the man that was suppose[d] to protect her.
(State Habeas Pet. Annex 8-9.)

[5] The court also noted that Bowles' "claim that a portion of his confession was withheld or destroyed is belied by" the fact that the DVD of that confession "includes a time-stamp." (Id. at 6 n.2.)

[6] The Circuit Court also found that this deleted video allegation was without merit if construed as an independent Brady claim or as an alleged violation of state discovery rules.

8

>    -admitted his mother-in-law called the police as soon as she saw him;
>    -accused his mother-in-law of being complicit in the affair; and
>    -admitted, "I repeatedly stabbed my wife."
>
> The Court finds that there is no reasonable probability that such additional statements, even if they had existed and not [sic] been presented to the jury, would have changed the jury's belief that he committed second-degree murder. Accordingly, the Court finds that [Bowles] cannot establish the prejudice prong required by Strickland.

(Cir. Ct. Habeas Final Order 9-10.)

Bowles' statement of his federal habeas claim is identical to the state habeas claim. He has not offered any evidence or argument demonstrating that the Circuit Court's adjudication of this claim was contrary to, or an unreasonable application of, established federal law or that it was based on an unreasonable determination of the facts in the state court record. Moreover, after its own review of the record, this court can make no such finding. Accordingly, under § 2254(d), the court must grant the motion to dismiss as to Claim 2.

### III.

For the reasons stated, the court will grant the motion to dismiss. An appropriate order will enter this day.

The Clerk is directed to send copies of this memorandum opinion and accompanying order to petitioner and to counsel of record for respondent.

ENTER: This 19th day of February, 2016.

_/s/ Jon Conrad_
Chief United States District Judge